01

02

03

04

05

06

07

08

09

10

11

12

13

14

15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NEAL A. BELT,                                    )
                                                 )
                  Plaintiff,                     )          Case No. C04-2490-JCC-JPD
                                                 )
            v.                                   )
                                                 )
JO ANNE B. BARNHART, Commissioner,               )          REPORT AND RECOMMENDATION
Social Security Administration,                  )
                                                 )
                  Defendant.                     )
_____          )

        Plaintiff Neil A. Belt proceeds through counsel in his appeal of a final decision of the

Commissioner of the Social Security Administration (the "Commissioner").  The

Commissioner denied plaintiff's application for Supplemental Security Income ("SSI")

benefits under Title XVI of the Social Security Act after a hearing before an administrative

law judge ("ALJ").  For the reasons set forth below, the Court recommends that the ALJ's

decision be affirmed and that this suit be dismissed.

## I.  FACTS AND PROCEDURAL HISTORY

        Plaintiff is a forty-six-year-old father with a work history primarily limited to cutting

hair.  AR 52, 177, 182, 203.  He has a high-school education, a history of intermittent

incarceration, and presently subsists upon various forms of public assistance.  AR 172, 177,

192, 481.  On March 13, 2001, plaintiff applied for SSI benefits, alleging that he became

01  disabled on July 1, 1995.[1]  AR 169, 176.  Plaintiff alleges disability stemming from severe

02  chronic depression and low back pain.  AR 202.  Plaintiff's application was denied both

03  initially and upon reconsideration.  AR 126, 132.

04      Plaintiff requested a hearing, which was held before an ALJ on April 16, 2003.  AR

05  48, 151.  The ALJ, however, denied plaintiff's application in a decision dated October 1,

06  2003.  AR 34-47.  The ALJ found plaintiff suffered from the severe impairments of lumbar

07  disc disease, depressive disorder, and personality disorder, but found that they did not prevent

08  plaintiff from being able to perform other work available in the national economy.  AR 46-47.

09  Plaintiff requested an appeal, but the Appeals Council denied his request on October 27,

10  2004.  AR 8.  The ALJ's decision therefore became the final decision of the Commissioner

11  for purposes of this Court's review.

12      Plaintiff timely filed this complaint to appeal the ALJ's decision.  Dkt. No. 3.

13                          II.  JURISDICTION

14      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §§

15  405(g) and 1383(c)(3).

16                      III.  STANDARD OF REVIEW

17      The district court may set aside the Commissioner's denial of social security benefits

18  when the ALJ's findings are based on legal error or not supported by substantial evidence in

19  the record as a whole.  *See* 42 U.S.C. § 405(g); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th

20  Cir. 1996) (internal citations omitted).  Substantial evidence is defined as more than a mere

21  scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might

22  accept as adequate to support a conclusion.  *Smolen,* 80 F.3d at 1279.  The ALJ is responsible

23  for determining credibility, resolving conflicts in medical testimony, and for resolving

24  ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Where the evidence is

25  _____

26      [1]Plaintiff has also applied for benefits on two previous occasions, but both applications
    were denied.  AR 88, 117, 123, 169.

REPORT AND RECOMMENDATION
PAGE -2

01  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

02  must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Smolen*, 80

03  F.3d at 1292).

04        If the Court determines that the ALJ erred, the Court has discretion to remand for

05  further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir.

06  1990). The Court may direct an award of benefits where "the record has been fully developed

07  and further administrative proceedings would serve no useful purpose." *McCartey v.*

08  *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

09        Such a circumstance arises when: (1) the ALJ has failed to provide legally
          sufficient reasons for rejecting the claimant's evidence; (2) there are no
10       outstanding issues that must be resolved before a determination of disability can
          be made; and (3) it is clear from the record that the ALJ would be required to
11       find the claimant disabled if he considered the claimant's evidence.

12  *Id.* at 1076-77.

13

                      IV.  EVALUATING DISABILITY
14

15        As the claimant, Mr. Belt bears the burden of proving that he is disabled within the

16  meaning of the Social Security Act. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

17  Disability is defined as the "inability to engage in any substantial gainful activity by reason of

   any medically determinable physical or mental impairment, which can be expected to result in
18

19  death, or which has lasted or can be expected to last for a continuous period of not less than

   twelve months[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled only if his impairments
20

21  are of such severity that he is not only unable to do his previous work, but cannot, considering

   his age, education, and work experience, engage in any other substantial gainful activity
22

23  existing in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A), 1382(c)(a)(3)(B); *see also*

   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
24

25        The social security regulations set out a five-step sequential evaluation process for

26  determining whether a claimant is disabled within the meaning of the Social Security Act. *See*

01  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must establish that he is not

02  engaging in any substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the

03  claimant does so, then at step two, the claimant must establish that he has one or more

04  medically severe impairments or combination of impairments that limit his physical or mental

05  ability to do basic work activities.  If the claimant does not have such impairments, he is not

06  disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

07  impairment, the Commissioner moves to step three to determine whether the impairment meets

08  or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

09  416.920(d).  A claimant who meets one of the listings for the required twelve-month duration

10  requirement is disabled.  *Id.*

11      When the claimant's impairment neither meets nor equals one of the impairments listed

12  in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

13  residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

14  Commissioner evaluates the physical and mental demands of the claimant's past relevant work

15  to determine whether the claimant can still perform that work.  *Id.*  If the claimant is not able to

16  perform his past relevant work, then the burden shifts to the Commissioner at step five to show

17  that the claimant can perform some other work that exists in significant numbers in the national

18  economy, taking into consideration the claimant's RFC, age, education, and work experience.

19  20 C.F.R. §§ 404.1520(f), 416.920(f); *Tackett*, 180 F.3d at 1099-100.  If the Commissioner

20  finds the claimant is unable to perform other work, then the claimant is found disabled and

21  benefits may be awarded.

22                          V.  DECISION BELOW

23      On October 1, 2003, the ALJ issued a decision denying plaintiff's request for benefits

24  finding, *inter alia*:

25

26

REPORT AND RECOMMENDATION
PAGE -4

* * *

3. The claimant has degenerative lumbar disc disease; a depressive disorder; and a personality disorder.  These impairments are severe, but they do not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of information contained in the medical reports and other evidence of record.

5. The claimant retains the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently.  He can sit or stand/walk for 6 hours each in an 8-hour workday.  He should avoid heights or hazards.  He should have limited contact with co-workers and supervisors, and not with the public.

* * *

9. Although the claimant is unable to perform the full range of light work, he is capable of performing other work that exists in substantial numbers.  Such work includes positions such as cleaner/housekeeper (DOT 323.687–010), with 5,800 jobs in the state, 295,000 jobs nationally; and small products assembler (DOT 706.684-022), with 4,500 state jobs and 325,000 jobs nationally.  A finding of "not disabled" is therefore reached within the framework of the above-cited rule.

10. The claimant has not been under a disability, as defined in the Social Security Act, at any time through the date of this decision.

AR 46-47.

## VI.  ISSUES ON APPEAL

In this case, at step five, a vocational expert ("VE") was called to testify.  The ALJ provided a hypothetical, consistent with the ALJ's RFC finding above (Finding No. 5).  The VE testified that accepting the ALJ's RFC analysis, jobs for the plaintiff existed in the economy.  AR 82-83.  However, the VE also testified that if the plaintiff was found to be testifying credibly, then his mental health impairments — and particularly his depression and his inability to deal with anger — would mean that no jobs existed for him.  AR 83-86.

The ALJ determined that the plaintiff was not credible.  Finding 4; AR 46.  Although the plaintiff's brief suggests that the ALJ committed many errors, the primary thrust of the

REPORT AND RECOMMENDATION
PAGE -5

01  appeal is the ALJ did not properly assess the limitations imposed by plaintiff's mental-health

02  impairments.  The plaintiff also argues that because the RFC finding did not include all

03  limitations imposed by his mental-health impairments, the hypothetical asked of the

04  vocational expert at step five was inadequate.  Resolution of this appeal therefore requires an

05  examination of three issues:

06      A.      Did the ALJ err in reaching an adverse credibility determination?

07      B.      Did the ALJ properly consider and evaluate the proffered medical evidence
                regarding the plaintiff's mental health?

08

09      C.      Was the ALJ's hypothetical to the vocational expert inaccurate and
                incomplete?

10                          VII.  DISCUSSION

11      A.      The ALJ Did Not Err in Reaching an Adverse Credibility Determination.

12          According to the Commissioner's regulations, a determination of whether to accept a

13  claimant's subjective symptom testimony requires a two step analysis.  20 C.F.R. §§ 404.1529,

14  416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p (1996).  First, the

15  ALJ must determine whether there is a medically determinable impairment that reasonably

16  could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b);

17  *Smolen*, 80 F.3d at 1281-2; SSR 96-7p.  Once a claimant produces medical evidence of an

18  underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of

19  symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v.*

20  *Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater,* 157 F.3d 715, 722

21  (9th Cir. 1998) (internal citations omitted).  Absent affirmative evidence showing that the

22  claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the

23  claimant's testimony.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

24          When evaluating a claimant's credibility, the ALJ must specifically identify what

25  testimony is not credible and what evidence undermines the claimant's complaints; general

26  findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may

REPORT AND RECOMMENDATION
PAGE -6

01  consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

02  inconsistencies in testimony or between testimony and conduct, daily activities, work record,

03  and testimony from physicians and third parties concerning the nature, severity, and effect of

04  the symptoms of which he complains.  *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec.*

05  *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted).

06          In this case, the ALJ found the plaintiff to be a "highly manipulative witness with little

07  or no veracity."  AR 44.   The ALJ considered plaintiff's statements regarding the extent of

08  his impairments and found them "not credible" in light of the record as a whole.  AR 40.  The

09  ALJ provided appropriate reasons for finding plaintiff not credible.  This finding is

10  significant, because the ALJ expressed concerns that certain medical opinions relating to

11  plaintiff's mental health conditions could have been influenced unduly by over-reliance on

12  plaintiff's self-reporting.

13          The ALJ noted that the record contained many differences in the plaintiff's

14  presentation when he was being seen by his psychiatrists as opposed to being seen by doctors

15  to treat his physical problems.  AR 44.  He noted "much of the psychiatric assessments are

16  based on claimant's own recounting of his history and symptoms.  Where there has been

17  direct observation of his symptoms and functioning, he has never appeared as impaired as his

18  descriptions." *Id.*  The ALJ also found that, despite plaintiff's testimony where he claimed he

19  suffered  physical limitations of back pain from degenerative disc disease, and pain after

20  walking for four to five minutes or sitting for only ten to fifteen minutes (AR 39, 55), he was,

21  in fact, able to maintain a variety of "vigorous" social activities.  AR 39, 40, 43-44.  Indeed,

22  the plaintiff engaged in snowboarding, played ping pong, went swimming, and performed a

23  variety of household tasks.  AR 54-55, 58.  The reasons offered by the ALJ are sufficiently

24  clear and convincing to justify his adverse credibility determination.

25

26

REPORT AND RECOMMENDATION
PAGE -7

01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

B.    The ALJ Properly Considered and Evaluated the Medical Evidence Necessary to Determine Plaintiff's RFC Accurately.

Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. *Id.* at 761-62 & n.7. When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Reddick* v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). When rejecting uncontraverted medical opinions, the ALJ must explain his reasons for rejecting them in proper detail. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

Similarly, an ALJ may reject a treating physician's controverted medical opinion by providing "specific and legitimate" reasons based on substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citations omitted). An ALJ may reject medical opinions based upon check-the-box type reports that lack a narrative explanation for their conclusions. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (internal citations omitted). Courts are not obligated to accept any treating physician's opinion that is brief and conclusory in form and that offers few clinical findings to support its conclusions. *Magallenes*, 881 F.2d at 751.

The ALJ found the plaintiff had a personality disorder and a depressive disorder. AR 46. The plaintiff contends, however, that the ALJ erred by finding that these impairments caused the plaintiff to suffer only moderate limitations of social functioning and that he

REPORT AND RECOMMENDATION
PAGE -8

01 ignored evidence from physicians supporting a greater limitation.  Dkt. No. 11.  He argues

02 that the ALJ should have made "better inferences," that there were alternative "reasonable

03 inferences," and that the ALJ could have made what he calls "fair inferences."  Dkt. No. 12 at

04 20-21.  As discussed below, however, the ALJ's evaluation of the medical evidence was

05 supported by substantial evidence as that term is defined, and should be affirmed.

06           1. <u>Dr. Cahn</u>.  Dr. Cahn treated plaintiff over the course of two years and

07 diagnosed him with depression, possible post-traumatic stress disorder ("PTSD"), intermittent

08 explosive disorder, and a personality disorder.  AR 481-82.  Dr. Cahn expressed doubt at

09 plaintiff's ability to "function as a wage earner" because of his interpersonal difficulties, anger

10 management problems and tendency to over-react.  AR 483.  He also checked boxes in a form

11 indicating that plaintiff's impairments caused marked difficulty with judgment, interacting with

12 coworkers and supervisors, and dealing with work pressure.  AR 478.

13           The ALJ gave Dr. Cahn's opinions "substantial consideration[,]" because they were

14 generally consistent with other opinions found in the record.  AR 42.  Indeed, the decision

15 acknowledges plaintiff's social and interpersonal limitations.  Nevertheless, the ALJ rejected

16 Dr. Cahn's more restrictive limitations, because he believed Dr. Cahn relied too heavily on

17 plaintiff's self-reporting, and because he determined the restrictions to be inconsistent with

18 the record overall.  AR 42-43.  The ALJ also attached less weight to certain limitations found

19 by Dr. Cahn by noting that they were on a check-box form that was not supported by specific

20 clinical findings or references to the record.  AR 40.

21           In this case, the ALJ properly evaluated Dr. Cahn's opinion and gave adequate reasons

22 for discounting portions of that opinion.  The ALJ identified several reasons why Dr. Cahn's

23 reliance on plaintiff's self-reporting may have undermined his diagnoses.  He relief heavily

24 upon inconsistencies between the reportedly disabling effects of plaintiff's impairments and

25 the extent of his physical daily activities.  AR 40, 42-44.  The ALJ also noted that the

26 limitations Dr. Cahn assigned to plaintiff were inconsistent with his activities of daily living.

REPORT AND RECOMMENDATION
PAGE -9

01  AR 42.  As set out above, plaintiff testified that he engaged in snowboarding, swimming,

02  sledding, playing pool, and other activities.  AR 58.  He also does his own housework,

03  including dishes, cleaning, grocery shopping, and managing his budget.  AR 54-55.  The ALJ

04  also noted inconsistencies regarding plaintiff's reported use of illicit drugs.  AR 41.

05  Moreover, the ALJ observed that the record — including other medical opinions — showed

06  that plaintiff's mental impairments did not prevent him from being able to work.  AR 43-44,

07  372, 386.  Finally, the ALJ observed that cited limitations were on a check-the-box form,

08  which provided little explanation for the bases of the checked limitation.  Such forms are

09  entitled to less weight.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).  The ALJ did not

10  err in his assessments of Dr. Cahn's reports.

11          2.  Community Psychiatric Clinic and Dr. Kersey.  The ALJ considered but did

12  not attach great significance to opinions of the mental-health workers at the Community

13  Psychiatric Clinic ("CPC").  These mental-health workers diagnosed plaintiff with dysthymic

14  disorder, arthritis, and back pain.  AR 413.  They also assessed him with a GAF score of 48.[2]

15  AR 413.  The ALJ, "considered" these opinions but did not "completely" adopt them.  AR 40.

16  Specifically, he rejected the GAF score as being too low in light of the record.  AR 40.  This

17  conclusion was supported by the record generally and the CPC's intake evaluation as well,

18  which found plaintiff to have normal thought processes, proper speech and behavior, and

19  normal perceptual processes.  AR 412.

20          The ALJ also based his rejection of the GAF on the fact that the workers who

21  rendered the opinion were not "acceptable medical sources."  AR 40.  The regulations define

22  "acceptable medical sources" as licensed physicians, licensed or certified psychologists,

23  licensed optometrists, licensed podiatrists, and qualified speech language pathologists.  20

24  C.F.R. §§ 416.913(a), 404.1513(a).  The record shows that the professionals had the

25

26          [2]They also opined that his GAF ranged from 45 to 60 over the year.  AR 413.

REPORT AND RECOMMENDATION
PAGE -10

01   credentials "MHP" and "MSW." AR 413. A professional with an MSW degree ("Masters in

02   Social Work") does not fall within the regulatory definition of an "acceptable medical

03   source." The Court has been directed to no authority that indicates that a person with an

04   MHP degree or certification would fall within the definition.[3] Absent evidence suggesting

05   these workers were proper medical sources, it cannot be said that the decision of the ALJ to

06   place less weight on the assessments of these professionals was error.

07         The ALJ also discounted the CPC opinions on the fact that plaintiff's "mental status

08   functioning was largely normal and because he appeared to have some improvement with the

09   use of medication." AR 40-41. These comments refer to the opinions of Dr. Kersey, to

10   whom the CPC staff referred plaintiff for treatment. Dr. Kersey diagnosed plaintiff with

11   "major depressive disorder" and observed a variety of symptoms, including low self-esteem,

12   low energy, and decreased concentration. AR 470. However, he also noted signs of

13   improvement. AR 462–67, 470-73. For instance, he noted that plaintiff had been "addressing

14   his issues and making progress[.]" AR 468. His notes also indicate that psychiatric drugs

15   "helped his depressive symptoms about 50%." AR 467. Although he recognized that the

16   drugs were only "partially effective," he was experimenting with other potential drug

17   therapies. *Id.*

18         3. Dr. Anderson. Plaintiff also argues the ALJ "ignor[ed]" most of Dr.

19   Anderson's report and that "[t]he better inference is that Mr. Belt cannot successfully

20   work[.]" Dkt. No. 12 at 19. Dr. Anderson diagnosed plaintiff with chronic depression and

21   affective disorder. AR 351. She was unable to conclude whether the plaintiff was suffering

22

23   _____

24         [3]According to the Dictionary of Initials and Acronyms Used by Counselors, "MHPs
     are qualified mental health providers who have been designated by an agency or hospital to
25   meet contractual requirements with the county to perform duties in accordance with
     Washington State law." *See* http://www.counselingseattle.com/acronyms/i-m.htm#-M-. This
26   definition, however, does not clarify whether such workers are acceptable medical sources for
     purposes of the regulations.

01    from PTSD, but did say that possible features of PTSD existed.  She observed that plaintiff's

02    depression had a "profound" impact on him.  AR 351-52.

03         However, Dr. Anderson did not assess substantial functional limitations on the

04    plaintiff's actual ability to work.  Indeed, she noted he was intelligent, articulate, and capable

05    of insight.  She also noted that he had never been fired from a job, but would work only for

06    periods of six to nine months before quitting.  AR 349.  She concluded that, absent

07    improvement, he would likely bounce around from job to job.  AR 351-52.  The ALJ devoted

08    three paragraphs of evaluation of Dr. Anderson's analysis and interpreted it to indicate that

09    plaintiff is capable of work "when he so chooses."  AR 40-41.  The ALJ did not simply

10    ignore Dr. Anderson's report.

11         4.  Dr. Johnson.  Dr. Johnson was the medical expert ("ME") who testified at

12    the hearing.  Plaintiff argues that the ALJ should have relied on his opinion that plaintiff had

13    more restrictive limitations than those actually found by the ALJ.  Dkt. No. 12 at 19-20.

14         The ME diagnosed plaintiff with depression and personality disorder.  AR 75.  He also

15    assigned moderate limitations in concentration, persistence or pace, and marked limitations in

16    social functioning.  AR 76.  He opined that plaintiff's ability to control his anger caused most

17    of these limitations.  AR 76.  The ALJ indicated that he "essentially agree[d]" with this

18    opinion, but found that plaintiff's limitations on social functioning were only moderate (rather

19    than marked), when looking at the record as a whole.  AR 43.

20         Because Dr. Johnson did not actually treat or examine plaintiff, he is properly

21    characterized as a non-examining physician.  Opinions from non-examining medical sources

22    are to be given less weight than treating or examining doctors.  *Lester v. Chater*, 81 F.3d 821,

23    831 (9th Cir. 1995).  An ALJ must evaluate the opinion of a non-examining source and explain

24    the weight given to it.  SSR 96-6p, at *2.  The ALJ gave a lengthy explanation for why he

25    disagreed with the marked limitation.  He observed that plaintiff had periods of adequate

26    social functioning where he could control himself, as well as intermittent periods of lashing

REPORT AND RECOMMENDATION
PAGE -12

01  out.  AR 42-43.  He also pointed out that plaintiff generally interacted appropriately with the

02  medical professionals who were evaluating him for purposes of his applications.  AR 43.

03  There is support in the record for these assertions. *See, e.g.*, AR 481 (Dr. Cahn reporting that

04  plaintiff had held past jobs for nine to twelve months and had left only because he became

05  unhappy or disillusioned — not because of any inability to control violent outbursts).

06           5.  Other Physicians.  Plaintiff argues that the ALJ did not properly consider

07  the opinions of the Disability Determination Services ("DDS") evaluators, particularly those

08  that opined plaintiff would face problems focusing, functioning socially, and completing a

09  normal work day.  Dkt. No. 12 at 20-21.  Defendant argues the ALJ did not reject these

10  opinions, but rather relied on the narrative description associated with them instead of the

11  check-the-box portion of the form.  Dkt. No. 14 at 11-12.

12           Several doctors from DDS evaluated plaintiff.  AR 364-69, 372-73.  Dr. Timothy

13  Smith opined that plaintiff could perform light work and noted that his back pain was

14  "actually more intermittent and usually occurs after some strenuous activity."  AR 364-69.

15  Dr. Flemming agreed.  *Id.*  Drs. Nelson and Fisher provided a mental RFC analysis.  AR 370-

16  72.  They assigned moderate limitations to plaintiff's ability to maintain attention and

17  concentration, as well as with other forms of concentration, persistence, and pace.  AR 371.

18  They also assigned a marked limitation on plaintiff's ability to interact appropriately with the

19  general public and moderate limits on other forms of social interaction.  AR 371.

20           The ALJ observed each of these limitations and agreed with them because they were

21  "fairly well supported in the record."  AR 44-45.  He found, however, that plaintiff had "a bit

22  greater capacity for social functioning than the DDS determined."  AR 45.  The ALJ gave

23  several reasons for this conclusion.  First, the ALJ explained that he relied more on the

24  evaluation's "specific" explanatory notes than the checked boxes alone.  AR 44.  Those notes

25  explained that the plaintiff "appears to be intelligent, articulate, and capable of insight."  AR

26  372.  They also indicated that, although his depression and antisocial behaviors "may

REPORT AND RECOMMENDATION
PAGE -13

01   occasionally affect his concentration, . . . his condition is well enough controlled that he should

02   be able at least to carry out short and simple instruction in a reasonably consistent manner."

03   *Id.* They also indicated that he "[w]ould do best working independently" and "in a structured

04   consistent environment." *Id.*; *cf.* AR 386. They did not opine that he could not work.

05          Additionally, the ALJ properly pointed out that the opinions were those of non-

06   examining physicians and, as such were entitled to less weight. AR 45. Finally, the ALJ

07   observed that these opinions were consistent with the opinions of Drs. Smith and Flemming,

08   who opined that plaintiff's physical impairments enabled him to perform light work. AR 364-

09   69. Together, these reasons satisfy the ALJ's obligation to evaluate the opinion of a non-

10   examining source and explain the weight he assigns it. SSR 96-6p (1996); *see also Lester*, 81

11   F.3d at 831.

12          Plaintiff also makes an argument in passing that the ALJ erroneously disregarded or

13   discounted medical opinions by psychologists Rheade and Black. Dkt. No. 12 at 16. Dr.

14   Rheade assessed plaintiff on February 11, 1999, and January 10, 2000, and Dr. Black assessed

15   plaintiff on June 2, 2000. AR 244-51, 299-303. The ALJ appears to have determined that

16   these psychological records "pre-date the relevant time period at issue, and are of little help."

17   AR 44. The application at issue was protectively filed in March, 2001. The ALJ's

18   determination that these reports were of little help because of their age is not an abuse of

19   discretion that warrants reversal. Plaintiff does not seriously contend otherwise, and provides

20   no argument or authority for reopening plaintiff's earlier applications.

21              6. <u>Conclusions Regarding the ALJ's Assessments of the Extent of the Mental-</u>

22   <u>Health Impairment</u>. The plaintiff objects to the interpretation of the medical evidence

23   rendered by the ALJ. The ALJ found that the plaintiff did, in fact, suffer from mental-health

24   impairments. However, relying upon substantial evidence in the record, the ALJ found that

25   the plaintiff was capable of working in the economy when he so chooses. The role of this

26   Court is limited. As noted previously, the ALJ is responsible for determining credibility,

REPORT AND RECOMMENDATION
PAGE -14

01  resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews*, 53 F.3d at

02  1039.  Where the evidence is susceptible to more than one rational interpretation, the

03  Commissioner's conclusions must be upheld. *Thomas*, 278 F.3d at 954.  It is possible to

04  interpret the medical evidence in the fashion urged by plaintiff.  In this case, however, it

05  simply cannot be said that the only rational interpretation of conflicts in the medical evidence

06  is that which is advanced by the plaintiff.  The Commissioner's RFC determination is

07  supported by substantial evidence and must be affirmed.

08          C.      The ALJ's Hypothetical to the Vocational Expert Was Accurate and Complete.

09          Plaintiff argues that the ALJ's hypothetical to the VE was "unintelligible" and that the

10  VE's response therefore had "no evidentiary value."  Dkt. No. 12 at 22.  He further argues

11  that the hypothetical failed to portray adequately the extent of his impairments.  *Id.*

12  Defendant argues that the ALJ's hypothetical was accurate, and that he was not obligated to

13  accept the hypothetical offered by plaintiff's counsel, because it was not supported by

14  objective medical evidence.  Dkt. No. 14.

15          After a claimant has demonstrated that he has a severe impairment that prevents him

16  from doing his past relevant work, he has made a prima facie showing of disability. *Tackett*,

17  180 F.3d at 1100.  The burden then shifts to the Commissioner at step five to demonstrate

18  that, in light of the claimant's RFC, age, education, and work experience, he can perform

19  other types of work that exist in "significant numbers" in the national economy. *Id.*; 20

20  C.F.R. §§ 404.1520(f), 416.920(f).

21          When a plaintiff suffers from significant non-exertional impairments not contemplated

22  by the Medical Vocational Guidelines, the ALJ must use the principles in the appropriate

23  sections of the regulations to determine whether plaintiff is disabled.   SSR 85-15, at *1;

24  *Tackett*, 180 F.3d at 1101-02.  When an ALJ uses the Guidelines in this fashion to evaluate

25  non-exertional limitations not contemplated by the Guidelines, he must call upon a VE.

26  *Tackett*, 180 F.3d at 1102.  In such a scenario, the ALJ must provide the VE with an accurate

REPORT AND RECOMMENDATION
PAGE -15

01 and detailed description of the claimant's impairments, as reflected by the medical evidence

02 of record. *Id.* at 1101.  An ALJ may, however, exclude restrictions in a hypothetical question

03 that are not supported by substantial evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65

04 (9th Cir. 2001).

05      At the hearing, the ALJ called VE Brian Sorenson to determine what jobs, if any,

06 plaintiff could perform.  AR 45.  The ALJ provided the following hypothetical: "lift/carry 20,

07 10; stand and walk six out of eight; sit six out of eight, no heights or hazards; non public;

08 limited contact with coworkers, limited contact with supervision.  Any jobs?" AR 82.  The

09 first part of the hypothetical was designed to deal with plaintiff's physical limitations.  The

10 second part of the hypothetical ("non public; limited contact with coworkers; limited contact

11 with supervision") was designed to deal with plaintiff's mental-health limitations.  As the

12 ALJ noted, "[t]he claimant's mental impairments cause mild difficulty with daily living

13 activity, concentration, persistence, and pace, and moderate to marked difficulty with social

14 functioning.  There is no evidence that he has had any prolonged episodes of decompensation.

15 As a result of these limitations, the claimant should have limited contact with co-workers and

16 supervisors and not with the public." AR 45.  When asked whether any jobs existed, the VE

17 identified several light, unskilled jobs, including cleaner/housekeeper and small products

18 assembler.  AR 82-83.

19      The ALJ's hypothetical captured the basic functional limitations identified by the

20 ALJ, including the plaintiff's difficulties interacting with others.  Although plaintiff has urged

21 an alternative interpretation of the evidence, the ALJ's findings and the hypothetical that was

22 based on them were accurate and complete.  The VE's testimony also highlights the

23 significance of the ALJ's adverse credibility determination, which, as discussed above, was

24 supported by substantial evidence.

25      The ALJ's rejection of the additional limitations offered to the VE by plaintiff's

26 counsel did not constitute error.  After the VE had responded to the ALJ's hypothetical,

REPORT AND RECOMMENDATION
PAGE -16

01  plaintiff's counsel inquired as to whether plaintiff could still perform the identified jobs if the

02  opinions of examining Drs. Fisher and Nelson were fully credited.  AR 83-84.  The VE

03  responded that such limitations would "prohibit employment."  AR 84.  However, because the

04  ALJ appropriately discounted these opinions, he was not obligated to accept the limitations.

05  *Osenbrock*, 240 F.3d at 1164-65; *see also Magallanes*, 881 F.2d at 756-57 (noting that ALJs

06  need not accept restrictions not supported by substantial evidence as true).  The ALJ thus

07  properly rejected the additional restrictions, because he found they were not supported by the

08  evidence.  AR 46.

09                                    VIII.  CONCLUSION

10          For the reasons stated, the ALJ's decision should be affirmed and this matter

11  dismissed.  A proposed order accompanies this report and recommendation.

12          DATED this 16th day of December, 2005.

13

14                                                          JAMES P. DONOHUE
                                                            United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE -17